# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ANDREW PEPIN,

       Plaintiff,

vs.                                                                                         Civil No. 99-405 LH/WWD

KENNETH S. APFEL,
Commission of Social Security,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed October 29, 1999 **[docket # 5]**. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff is 38 years old and alleges a disability due to frequent attacks of gout which commenced May 31, 1991. He has a general equivalency diploma and past relevant work experience as a warehouseman, factory worker, general laborer, and bartender/dishwasher. He also complains of stomach and groin pains and depression.

    2. The decision from which Plaintiff appeals came after a hearing as a result of an Order of Remand by the Appeals Council. The remand order had directed the Administrative Law Judge ("ALJ") to obtain evidence from a vocational expert to "clarify the effect of assessed limitations" on Plaintiff's occupational base." Tr. at 168.[1]

---

[1] That hearing was the second hearing on the application. The first hearing was before an ALJ who had transferred to another location of the Office of Hearings and Appeals and it was

3. The ALJ found Plaintiff to be disabled as of October 27, 1994 and therefore entitled to receive both disability insurance benefits and supplemental security income benefits from that time forward. However, because Mr. Pepin was found not to be disabled on or prior to June 30, 1993, the date Plaintiff last met the insured status requirements of Title II, he was found not to be entitled to disability insurance benefits prior to that time and back to his alleged onset date of May 31, 1991.

4. The Appeals Council denied review of that decision. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g), specifically that part of the partially favorable decision which concludes that he is not entitled to disability benefits from his alleged onset date of May 31, 1991 to October 27, 1994. I need not address that part of the ALJ's decision which found him to be disabled (after October 27, 1994) since Plaintiff does not challenge those findings.

5. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A)); 1382c(a)(3)(A)). Social Security Regulations require the

---

determined that further proceedings were necessary.

Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

7. Plaintiff raises the following allegations of error with respect to the ALJ's decision:(1) the ALJ's decision is not based upon substantial evidence in that it does not comply with the Appeals Council remand of August 26, 1996; (2) the Commissioner's decision is not based upon substantial evidence because the ALJ failed to correctly evaluate all of Plaintiff's mental impairments in combination with the effects of his pain; (3) the ALJ's decision is not based upon substantial evidence because his credibility finding concerning Plaintiff's pain is incorrect and in error; and (4) the ALJ completely disregarded the time frame of the Williams' report which is the basis of Plaintiff's disability, and disregarded the effects of medication on Plaintiff's ability to perform work.

8. Plaintiff claims that his gout attacks affect his extremities and render him unable to stand, walk or move his arms. Tr. at 219, 229. He last worked six to eight years ago as a heavy laborer and was terminated due to a fight with a co-worker and a supervisor. Other jobs included stockroom work, general laborer, parts puller at an automobile towing company, bartender and dishwasher and aircraft fueler. Except for a three-year stint in the Army, the longest job he has held was six months to one year. On October 27, 1994, Plaintiff was in a motor vehicle accident after which, according to the ALJ's decision, the record contained evidence of disability.

9. Mr. Pepin contended that he could not work due to the dizziness and drowsiness that

3

were side effects of the various medications he took.[2] He stated that his symptoms of anxiety and depression remained unchanged despite the medications, Tr. at 129, but that the pain medication helped temporarily, Tr. at 131.

10. In its remand order, the Appeals Council noted that the prior ALJ's decision which stated that Plaintiff retained the residual functional capacity ("RFC") for a full range of sedentary work was in error, based on the ALJ's findings recorded on the Psychiatric Review Technique Form ("PRT"). Tr. at 168-69.

11. On remand, the ALJ found that Plaintiff did meet the requirements for disability, but only for the period after October 27, 1994.[3] However, the ALJ determined that he was *not* disabled prior to that time. Tr. at 23-24. This determination was based on several findings: that Plaintiff's limitations were only slight during this period in all relevant categories of functioning and that it was "well documented" that any of those limitations which did occur during the period before October 27, 1994 were "associated with continued and ongoing substance and alcohol abuse." Tr. at 24.[4] He further determined that Plaintiff's impairment for that time did not meet or equal a listed impairment, that he had the RFC to perform heavy work and that he had the ability

---

[2] Plaintiff was taking narcotic pain killers, Elavil for sleep and depression and other prescription medication for gout and "nerves." Tr. at 123.

[3] Plaintiff last met the insured status requirements of Title II on June 30, 1993. Tr. at 24. In order to be eligible for benefits prior to June 1993, Plaintiff would have had to show that he was disabled on or before that date.

[4] The ALJ specifically noted that he found Plaintiff to be disabled *after* October 27, 1994 even without consideration of his substance abuse impairment, according to regulations which preclude consideration of substance abuse if it contributes to a claimant's impairment. Tr. at 20; Pub.L. 104-121, § 150(a)(1), (b)(1) (codified as amended at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)(1997)).

to perform past relevant work as a bartender/dishwasher, warehouseman and factory laborer.

12. The ALJ found that Plaintiff's subjective complaints of complete inability to work were not credible, based on his inconsistent testimony, lack of medical history to support disability for the period prior to October 27, 1994 and the medical expert's opinion. Tr at 22-23.

**First Alleged Error**

13. Plaintiff alleges that the ALJ's decision is not based upon substantial evidence in that it does not comply with the Appeals Council's remand of August 26, 1996. I note that the Commissioner argues that the issue of whether the ALJ followed the Appeals Council's directive is not reviewable by this Court, since it was not the Commissioner's "final decision" under 42 U.S.C. § 405(g). See Gallegos v. Apfel, Table, text in Westlaw, 1998 WL 166064 (10th Cir. N.M.) (citing Browning v Sullivan, 938 F.2d 817, 822 (8th Cir. 1992)) (attached as Defendant's exhibit). I need not decide the issue, as this first alleged error would fail on its merits.

14. The remand order directed the ALJ as follows:

Give further consideration to the claimant's residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations. . .

Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.

15. The VE responded to several hypotheticals by stating that Plaintiff's physical limitations still allowed him to work at certain sedentary occupations, such as jewelry stringer, charge account clerk and personnel clerk. Tr. at 140-41. The VE also noted that the side effects of drowsiness, requiring frequent need during the day to lie down, and dizziness, would preclude these occupations. Similarly, Plaintiff's antisocial tendencies and other emotional limitations

5

(limited concentration, adaptation and socialization skills) would also eliminate the ability to work at all jobs. Tr. at 144.

16. I find that the ALJ complied with the Appeals Council Remand Order. However, in taking the VE's testimony into account, the ALJ determined that Plaintiff was disabled only for the period of time subsequent to October 27, 1994.[5] The Appeals Council's directive is consistent with what the ALJ would ordinarily be required to do when posing hypotheticals to the vocational expert ("VE"). See Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993) (vocational expert's testimony can provide substantial evidence to support the ALJ's findings only if the hypothetical question presented to the vocational expert adequately reflects the state of the record).

17. Plaintiff's contention is that there is nothing in the medical evidence to support the October 1994 cutoff date. He cites in particular to the psychological report of Kenneth Williams, Ed.D., dated September 1994 in which Dr. Williams opines that Plaintiff has a serious mental impairment ("severe levels of tension, anxiety, worrisomeness, and dysphoria that has left him feeling rather moody"). Tr. at 400.

18. Plaintiff points out that because the findings in Dr. Williams' report are similar to findings in Dr. Dempsey's report three years later (April 1997), Tr. at 404-410, the ALJ should have determined that Plaintiff was disabled as early as September 1994. The VE's testimony, then, according to Plaintiff, should have been attributable to Plaintiff's status pre-October 1994.

---

[5] Plaintiff's comparison of the first with the second ALJ's decision as going from a determination that Plaintiff could perform sedentary work to performing heavy work is not entirely accurate, as the later determination went only to that period of time prior to October 1994. The ALJ concluded that Plaintiff could not do *any* work, i.e., was disabled, for the period subsequent to that time.

6

Plaintiff also points to Plaintiff's difficulty in interaction with co-workers and supervisors, his prior DWI arrests, charges of domestic violence, as well as his patchy work history as a further basis for a finding of disability prior to October 1994.

19. Plaintiff urges a standard which is opposite of what is required under the regulations -- disability is not established by default. Plaintiff has the burden of proving a disability. See Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984). Thus, the ALJ was not required to find Plaintiff disabled on or before his last insured date based on medical reports and evidence which were relevant to the existence of disability after 1994, unless the record contained evidence of disability prior to that time. See Potter v. Sec'y of Health & Hum Serv., 905 F.2d 1346, 1349 (10th Cir. 1990) (retrospective diagnosis without evidence of actual disability prior to the expiration of claimant's insured status is insufficient); see also 20 C.F.R. §§ 404.1508, 416.908

20. Contrary to Plaintiff's position, I find that the ALJ did not arbitrarily choose October 27, 1994, the date of the motor vehicle accident. Instead, I find that the ALJ's determination that the medical evidence supported a finding of disability after but not before this date, was based on substantial evidence in the record. The reports of Dr. Stehr, Dr. Swajian, Dr. Dempsey and Dr. Pacheco, all of which were considered and included in the ALJ's opinion, Tr. at 20, 22, were generated *after* October 27, 1994. Although the Williams' report was dated only one month before October 1994, it is not sufficient by itself to establish disability for that period of time contested by Plaintiff, i.e., on or before June 1993, in order to be eligible for disability benefits.

21. Moreover, the medical evidence in the record which relates to the time periods before October 1994 mentioned several attacks of gout but largely concerned treatment for bunions, groin pain and bronchitis. Tr. at 249-305; 306-337 (covering 5/92 - 8/94; 8/94 - 10/94).

7

The ALJ also sent written interrogatories to a medical expert ("ME"), Dr. Harold Brown, who opined that Plaintiff could do heavy work except during acute gout attacks, during which Plaintiff could perform sedentary work. Tr. at 196-97. The doctor also stated that as of June 1993, the date Plaintiff was last insured, he did not meet a listed impairment but that his impairment did equal a listing for affective disorders (§ 12.04) after September 14, 1994. Tr. at 196-97.

22. The ALJ's decision regarding the nondisability determination prior to October 1994 was also supported in the record by notations concerning Plaintiff's substance abuse, which influenced the ALJ's finding of nondisability for the period of time before October 1994. Tr. at 23. Although Plaintiff denied abuse of either alcohol or recreational drugs for "many years," and "eight years," Tr. at 122, evidence in the record in the form of statements to physicians indicates that he was abusing these substances until July 1994. Tr. at 397, 403.[6]

23. The hypotheticals posed to the VE at this hearing did include Plaintiff's various nonexertional impairments. Tr. at 140-44. Plaintiff argues that the ALJ did not question the VE about nonexertional impairments. However, because Plaintiff's counsel on cross-examination did include hypotheticals concerning all of Plaintiff's nonexertional impairments, they were thus included for consideration by the VE and in the record. There was nothing in the VE's responses to these hypotheticals, or the hypotheticals themselves, which could be viewed as being relevant to Plaintiff's status prior to June 1993. Rather, the information used as a basis for the hypotheticals was clearly gleaned from the post-1994 reports and medical evidence. Therefore, I find that the ALJ did engage the VE in proper questioning, posed appropriate hypotheticals to the expert which were based on substantial evidence from the evidence and included specific

---

[6] The ALJ noted the inconsistency in conducting a credibility analysis. Tr. at 22.

references from the record for support.

**Second Alleged Error**

24. Plaintiff next alleges that the Commissioner's decision is not based upon substantial evidence because the ALJ failed to correctly evaluate all of Plaintiff's mental impairments in combination with the effects of his pain. A claimant's mental impairment must be evaluated in combination with the effects of other impairments, including physical impairments and any nonexertional limitations. See Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991); Redfearn v. Chater, Table, text in Westlaw, 1996 WL 594278, *2-3 (10th Cir. Okla.).

25. Reviewing the record and the ALJ findings, I find that the ALJ did consider Plaintiff's mental impairments both alone and in combination with his physical impairments. The ALJ completed the PRT form to indicate that Plaintiff's mental impairment equaled listed impairment § 12.04. Tr.at 29-29.[7] In order to be eligible for disability insurance benefits, however, Plaintiff would need to be found disabled on or earlier than June 1993. Plaintiff encounters the same problem as in the first alleged error -- there is simply insufficient documentation of a disabling mental impairment prior to the date he was last insured, even in combination with the physical difficulties he was having at that time with joint swelling, cirrhosis and shin splints. See Mem.Brf. at 14.

26. Defendant acknowledges a notation in a medical progress note which initially reports Plaintiff as having anxiety, but correctly notes that it is dated several months after his insured

---

[7] Areas of social functioning; concentration, persistence and pace; and work-setting functioning were marked as severe, satisfying requirements for a listed impairment in the "B" category under § 12.04. It seems useless to argue that the ALJ incorrectly denoted certain disorders as absent (e.g., personality disorders) when they should have been marked present when in the end a determination of disability was made, if only for a limited period of time.

9

status expired.  Tr. at 278.  Thus, I find no error in the ALJ's evaluation of Plaintiff's mental condition.

**Third Alleged Error**

27. Plaintiff next alleges that the ALJ's decision is not based upon substantial evidence because his credibility finding concerning Plaintiff's pain is incorrect and in error.  Specifically, he alleges that the ALJ failed to consider all of Plaintiff's mental impairments in combination with the effect of his pain.

28. In a credibility inquiry, the ALJ should consider such factors as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."  Thompson, 987 F.2d at 1489 (quoting Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir.1991)).

29. In this case, the ALJ noted the inconsistency not only in Plaintiff's statements regarding substance abuse but also between his subjective testimony regarding inability to work and the occasional treatment he received for gout and arthritis.  Tr. at 22.  See Eggleston v. Bowen, 851 F.2d 1244, 1246-47 (10th Cir. 1988) (finding of noncredibility can be based on claimant's inconsistent answers to some questions and fact that assertions were at odds with much of the medical evidence in the case).  Again, I note that because the ALJ did conclude that Plaintiff was disabled after October 1994, the only challenge here is whether there was sufficient evidence to support the ALJ's finding of nondisability prior to that time.

30. I do not find the medical visits made by Plaintiff prior to October 1994 for various physical ailments to be sufficient to overcome the ALJ's finding of noncredibility regarding Plaintiff's complaints of disabling pain, even in combination with any mental impairment he may have had during that time. Disability requires "more than mere inability to work without pain." Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988) (to be disabling, "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment"). Therefore, I find no merit to this alleged error.

**Fourth Alleged Error**

31. Last, Plaintiff contends that the ALJ completely disregarded the time frame of Dr. Kenneth Williams' report which is the basis of Plaintiff's disability, and disregarded the effects of medication on Plaintiff's ability to perform work. As discussed above, Dr. Williams' report is not significant as evidence of disability which started on or before June 30, 1993, and certainly not as evidence of disability from Plaintiff's alleged onset date of May 1991. Contrary to Plaintiff's contentions, the ALJ did not disregard the time frame of the report, but took it into account when considering for what periods of time the record contained evidence of Plaintiff's disability and when concluding that Plaintiff was not disabled prior to the expiration of his insured status on June 30, 1993. Tr. at 22-23.

32. Similarly, there is no history of side effects from medications he was taking for his mental impairment on or before June 30, 1993 largely because there is no evidence of the mental impairment which would have led to such treatment. I note that there is mention of medications he was taking in a disability report dated June 1995 and February 1998 which do not mention when the medications were first prescribed, Tr. at 234, 246, and additional mention in Dr.

11

Williams' report of "anti-inflammatory and pain medications" Plaintiff took for his "medical condition," Tr. at 397.

33. In sum, I find that (1) the ALJ's decision is based upon substantial evidence; (2) the ALJ correctly evaluated all of Plaintiff's mental impairments in combination with the effects of his pain; (3) the ALJ's credibility finding concerning Plaintiff's pain is correct; and (4) the ALJ did not disregard the time frame of the Williams' report which is the basis of Plaintiff's disability, and did not disregard the effects of medication on Plaintiff's ability to perform work.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 5]** be DENIED and this cause of action DISMISSED WITH PREJUDICE. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE